In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00137-CR
______________________________


DOYLE WILSON HALL, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
 Trial Court No. 18606


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Doyle Wilson Hall, Jr., appeals his conviction for aggravated assault with a deadly weapon.



Hall does not challenge the sufficiency of the evidence to support the conviction. Instead, in a single
point of error, Hall contends the cumulative effect of errors in the jury charge during the
guilt/innocence phase of the trial resulted in Hall being denied a fair and impartial trial. We affirm
the conviction. 
I. Factual and Procedural Background
            Hall entered the Chili's restaurant in Paris, Lamar County, Texas, and ordered two twenty-three ounce beers and a steak. Hall later began a conversation with another patron. At some point,
however, Hall's voice became loud and Joann Hickman, the waitress serving him, became concerned. 
Soon thereafter Hall ordered another beer, but Hickman refused to serve Hall any further alcohol. 
Hickman told Chad Parrish (the director of operations for Chili's parent company, who was
conducting one of his monthly visits to the store) she had refused further service to Hall; she then
gave Hall his bill for $26.89, which Hall initially refused to pay in full, but nonetheless ultimately
paid. After Hickman gave Hall his change and had turned around, she saw a penny fly by her head. 
She assumed Hall had thrown the penny because there was no one else nearby who could have done
it. Hickman then told Hall he needed to leave. 
            Rather than leave, Hall went to the restroom. Hickman then discussed the situation with
Gary Price, an assistant manager at the restaurant. When Hall left the restroom, he walked past the
front entrance and started to re-enter the bar area of the restaurant. Parrish, along with Chris Hanson
(a restaurant employee), confronted Hall and told him to leave. Hickman then observed Parrish "go
back," which she believed meant Hall had hit Parrish. Hickman hit the panic button


 behind the bar
and went to the kitchen to call the police. When Hickman returned from the kitchen area, she saw
that Parrish and Hanson had Hall pinned on one of the benches by the front door. 
            According to Price's testimony, Hall and Parrish were wrestling by the front door when Hall
pulled out a knife. Parrish was able to grab Hall's right hand to force the knife away. Price and
Hanson then helped Parrish force Hall down on the bench and removed the knife from Hall's
possession. A later examination of the knife showed there was blood on its blade; Price also found
blood on the bench where Hall had been restrained.


 
            Parrish testified that, as Hall attempted to re-enter the bar area of the restaurant, Parrish
confronted Hall and told him to leave. Hall told Parrish, "you don't want any of this," at which point
Parrish stepped back, looked down at Hall's hands, and saw that Hall had a knife "in the side of
[Parrish's] stomach."


 Parrish felt threatened and instinctively reached down, grabbed Hall's hand
that was holding the knife, and tried to get the knife away from Hall. Hall was then pushed down
onto a bench in the entryway, and the knife was taken away from him. According to Parrish's
testimony, he did not possess, display, or use a weapon at any time during the confrontation with
Hall; Hall was the only one who brandished a knife. 
            Officer Doug Thompson of the Paris Police Department was dispatched to the restaurant in
response to the silent alarm and Hickman's 9-1-1 call. Thompson entered the foyer and observed
Hall on a bench with his bloody hand bandaged. Several restaurant employees had detained Hall. 
Thompson then "contained the scene," handcuffed Hall, and collected the knife


 as evidence. During
the course of his investigation, Thompson determined Hall had a wound to his hand and Parrish had
a small scrape on his abdomen. 
            During his testimony, Hall claimed he did not attack Parrish with a knife and denied even
possessing a knife at the time. Hall told the jury that, once he left the restroom, he was heading out
the door when several restaurant employees attacked him. Once the police arrived, Hall asked the
police to file assault charges against the restaurant employees; the police, however, declined to do
so because they found nothing to substantiate Hall's claims that he was the victim. During
cross-examination, Hall was forced to admit he was a convicted felon. He also admitted he had
consumed two or three large draft beers before the incident. 
II. Standard of Review
            In his sole point of error, Hall contends several errors in the jury charge during the
guilt/innocence phase resulted in the denial of a fair and impartial trial. In reviewing the charge, the
appellate court must first determine whether the charge contains error. Abdnor v. State, 871 S.W.2d
726, 731 (Tex. Crim. App. 1994). The standard of review for then reviewing any charge errors
depends on whether the defendant properly objected. Mann v. State, 964 S.W.2d 639, 641 (Tex.
Crim. App. 1998); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). 
If a proper objection was raised, reversal is required if the error was "calculated to injure the rights
of defendant." Almanza, 686 S.W.2d at 171; see also Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 1981). Stated differently, if the error was properly preserved, we must reverse the trial
court's judgment unless we are convinced the charge error was harmless. Almanza, 686 S.W.2d at
171.
            On the other hand, if the error was not preserved, reversal is not required unless the harm is
so egregious that the defendant was denied a fair and impartial trial or the defendant has suffered
egregious harm. Abdnor, 871 S.W.2d at 732; Rudd v. State, 921 S.W.2d 370, 373 (Tex.
App.—Texarkana 1996, pet. ref'd). "Egregious harm" is present "whenever a reviewing court finds
that the case for conviction or punishment was actually made clearly and significantly more
persuasive by the error." Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).
III. Analysis
            First, the record is clear that, when asked for objections to the jury charge, Hall's counsel
stated, "I have no objection to the charge." Accordingly, error was not preserved and Hall must show
egregious harm for a reversal to be warranted. See Abdnor, 871 S.W.2d at 732.
            Under Texas law, there are three different ways to commit the offense of assault:
(1)intentionally, knowingly, or recklessly caus[ing] bodily injury to another,
including the person's spouse;
(2)intentionally or knowingly threaten[ing] another with imminent bodily injury,
including the person's spouse; or
(3)intentionally or knowingly caus[ing] physical contact with another when the
person knows or should reasonably believe that the other will regard the contact as
offensive or provocative.
 
Tex. Pen. Code Ann. § 22.01(a) (Vernon Supp. 2004–2005). The indictment in this case charged
Hall with intentionally or knowingly threatening Parrish with imminent bodily injury. The actual
charge became aggravated assault because the indictment alleged Hall used or exhibited a deadly
weapon during the commission of the assault. See Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon
Supp. 2004–2005).
            There are two ways in which aggravated assault may be committed under our law. The first
occurs when the assailant commits assault in any manner proscribed by Tex. Pen. Code Ann.
§ 22.01 (Vernon Supp. 2004–2005) and in so doing causes serious bodily injury to the victim. Tex.
Pen. Code Ann. § 22.02(a)(1) (Vernon Supp. 2004–2005). The second occurs when the assailant
commits an assault in any manner proscribed by Tex. Pen. Code Ann. § 22.01, and the actor uses
or exhibits a deadly weapon during the commission of the offense. Tex. Pen. Code Ann.
§ 22.02(a)(2).
            The first variant of aggravated assault is a "nature of the result" offense because the statute
imposes criminal liability based on the assailant's intent to cause a specific result: serious bodily
injury. See, e.g., Sneed v. State, 803 S.W.2d 833, 835 (Tex. App.—Dallas 1991, pet. ref'd) (statute
prohibiting assault of a police officer proscribes a particular result—causing injury to the
officer—and is a result-oriented offense). When an indictment alleges an actor committed the
offense of aggravated assault based on a specific result, the culpable mental state definition(s) that
are used in the trial court's charge guide the jury in determining whether the actor intended the
specific result of his or her conduct. 
            The second variant of aggravated assault—assault while using a deadly weapon—is a "nature
of the conduct offense." Guzman v. State, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999,
no pet.). This is because the Texas Legislature has proscribed the method in which the actor
commits the assault, regardless of the outcome of that conduct. When the offense is a "nature of the
conduct offense," the appropriate culpable mental state definition(s), as used in the trial court's
charge to the jury, are to guide the jury in determining whether the actor intended to use or exhibit
the deadly weapon during the commission of the offense. 
            We turn now to the case before us. The indictment charged Hall with threatening Parrish
with imminent bodily injury while exhibiting a deadly weapon; the indictment also included the
appropriate culpable mental states of "intentionally" and "knowingly," as required by Articles
22.01(a)(2) and 22.02(a)(2) of the Texas Penal Code. The abstract portion of the jury charge defined
"intentionally" and "knowingly," yet it unnecessarily included a definition of "recklessly," because
the latter was irrelevant given the indictment's language and the statutory language defining the
offense with which Hall was charged. See Tex. Pen. Code Ann. § 6.03(a), (b), & (c) (Vernon
2003); §§ 22.01(a)(2), 22.02(a)(2). Furthermore, the abstract portion of the jury charge read, "[A]
person commits the offense of assault if the person intentionally or knowingly or recklessly causes
bodily injury to another." While that language accurately states one alternative method of
committing an assault, it is not the method alleged in the indictment. Further, the trial court's
inclusion of the term "recklessly" was inappropriate in this case because Hall had been charged with
aggravated assault with a deadly weapon; this offense is a nature-of-conduct offense, and the statute
defining that form of aggravated assault includes only the culpable mental states of "intentionally"
and "knowingly."
            Accordingly, the abstract portion of the jury charge was erroneous because it included a
definition of a type of assault that differed from the indictment and encompassed both result-of-conduct and nature-of-conduct offenses. This conclusion, however, does not end our inquiry. We
must also examine the application portion of the jury charge to determine whether it, too, included
any error.
            To properly instruct the jury, the application portion of the jury charge should only have
authorized Hall's conviction if the jury found the nature (rather than the result) of Hall's conduct to
be unlawful. To do otherwise would have been tantamount to authorizing the jury to convict Hall
for an offense under Tex. Pen. Code Ann. § 22.01(a)(1) even though the indictment authorizes a
conviction only for an offense defined by Tex. Pen. Code Ann. § 22.01(a)(2). See Sneed, 803
S.W.2d at 836 (charge's application portion contained error where the charge allowed the jury to
convict the defendant for assaulting an officer when the application paragraph focused on the nature
of the defendant's conduct rather than the defendant's intended result).
            In this case, the trial court instructed the jury:
            Now, if you find from the evidence beyond a reasonable doubt that on or
about the 8th day of May, 2001, in Lamar County, Texas, the defendant DOYLE
WILSON HALL, JR., did then and there intentionally or knowingly threaten Chad
Parrish with imminent bodily injury and did then and there use and exhibit a deadly
weapon, to-wit: a knife, during the commission of said assault, as alleged in the
indictment, then you will find the defendant guilty of aggravated assault as charged.
 
For the jury to find Hall guilty, it was required to find that Hall had committed an assault as alleged
in the indictment (intentionally or knowingly threatened Parrish with imminent bodily injury) and
that Hall used and exhibited a deadly weapon, a knife. The jury finding that Hall committed the
assault, as alleged in the indictment, together with the finding that Hall used a deadly weapon
constitutes the aggravated assault. The application paragraph does not, as Hall claims on appeal,
authorize the jury to convict him based on the results caused by his conduct. Nor does it authorize
the jury to convict Hall if it found he recklessly threatened Parrish. Instead, the mens rea elements
of "intentionally" and "knowingly" properly modify Hall's intent at the time he made the threat. The
charge did not authorize Hall's conviction merely based on Parrish's scratched abdomen. Thus, we
find no error in the charge's application paragraph.
            Nonetheless, we must determine whether error in the abstract portion of the charge resulted
in "egregious harm" to Hall. See Abdnor, 871 S.W.2d at 732; Rudd, 921 S.W.2d at 373. To evaluate
the impact of the error, we determine harm "in light of the entire jury charge, the state of the
evidence, including the contested issues and weight of the probative evidence, the argument of
counsel[,] and any other relevant information revealed by the record of the trial as a whole." Mann,
964 S.W.2d at 641. The purpose in such an undertaking is to reveal the actual, not merely the
theoretical, harm to the accused. Rudd, 921 S.W.2d at 373.
            In this case, the application paragraph of the jury charge properly authorized Hall's conviction
only if the jury found Hall guilty of aggravated assault based on the nature of his conduct (displaying
a deadly weapon) rather than the result of his conduct (Parrish's injury). Officer Thompson testified
he believed the knife used by Hall was capable of causing serious bodily injury or death. See Tex.
Pen. Code Ann. 1.07(a)(17)(B) (Vernon Supp. 2004–2005). There was no evidence Parrish suffered
"serious bodily injury" during the assault. The evidence only showed that a "red mark" was on
Parrish, that the knife was held to his abdomen, and that a knife was seen at his side. See Tex. Pen.
Code Ann. § 1.07(a)(46) (Vernon Supp. 2004–2005) (defining serious bodily injury). The State's
argument emphasized the application paragraph of the charge and did not make reference to the
abstract portion of the charge. All of the State's arguments referred to threats such as: "All you have
to find is that he threatened him," "The threat was putting the knife to his side," "But the threat was
placing that knife up against his side. That was the threat, not the words," "he still did not have the
right to put that knife to Chad Parish's [sic] side. . . . He had no right to pull that knife and put it to
Chad Parish's [sic] side, absolutely no right," "But the reaction that he chose, to threaten him with
a knife, is the offense that you're here to decide today," "He had to threaten a person with imminent
bodily injury with a deadly weapon to commit the offense of aggravated assault . . . ."
            Thus, after reviewing (1) the entire jury charge, which included a proper application
paragraph; (2) the state of the evidence, which addressed only whether the knife was capable of
causing death or serious bodily injury, not whether Parrish actually suffered serious bodily injury;
and (3) the argument of counsel, we conclude the errors in the abstract portions of the jury charge
did not cause Hall "egregious harm." The record before us does not suggest Hall's conviction was
made more likely because of the error in the abstract portion of the charge. 
            Accordingly, we affirm the judgment.
 
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          July 20, 2004
Date Decided:             August 31, 2004

Publish