

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00342-CR

INNIS JOHNSON,

                                                    Appellant

 v.

THE STATE OF TEXAS,

                                                    Appellee

From the 278th District Court
Madison County, Texas
Trial Court No. 11,143

# OPINION

A jury convicted Innis Johnson of aggravated assault of a public servant and, after he pleaded true to enhancement allegations, assessed his punishment at fifty-five years' imprisonment. Johnson contends in two issues that: (1) the court erred by denying his motion for instructed verdict because the evidence is legally insufficient to prove he used or exhibited a deadly weapon during the commission of the assault; and (2) the court abused its discretion by allowing the State to impeach him with his prior

conviction for aggravated assault of a public servant because the probative value of this evidence is outweighed by the danger of unfair prejudice. We will affirm.

## Legal Sufficiency

Johnson contends in his first issue that the court erred by denying his motion for instructed verdict because the evidence is legally insufficient to prove he used or exhibited a deadly weapon during the commission of the assault.

### *Standard of Review*

A challenge to the denial of a motion for a directed or instructed verdict is a challenge to the legal sufficiency of the evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Montgomery v. State*, 198 S.W.3d 67, 84 (Tex. App.—Fort Worth 2006, pet. ref'd); *accord Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003). In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); *Witt v. State*, 237 S.W.3d 394, 396-97 (Tex. App.—Waco 2007, pet. ref'd).

We measure the sufficiency of the evidence against the hypothetically correct jury charge for the case. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Among other things, the hypothetically correct charge must accurately apply the "law" as "authorized by the indictment." *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000) (citing *Malik*,

953 S.W.2d at 240); *see also Lockwood v. State*, 237 S.W.3d 428, 431 (Tex. App.—Waco 2007, no pet.); *Sartain v. State*, 228 S.W.3d 416, 421 (Tex. App.—Fort Worth 2007, pet. ref'd). This means that the charge must instruct the jury on the statutory element(s) alleged in the indictment. *Curry*, 30 S.W.3d at 404-05.

In addition, the charge is limited by the factual allegations of the indictment. *See id.* at 404. *But cf. Gharbi v. State*, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003) (hypothetically correct jury charge need not include factual allegation which "is not a statutory element or 'an integral part of an essential element of the offense'") (quoting *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001)). Thus, because the indictment in *Curry* alleged that he had kidnapped Jetterson Williams, the "hypothetically correct jury charge could not simply quote the language of the statute" and instruct the jury to convict if it found he had kidnapped "another person." *See Curry*, 30 S.W.3d at 404. Rather, the hypothetically correct charge for that case would instruct the jury that the State must prove Curry had kidnapped Williams as alleged. *Id.*

*The Evidence*

At the time of the offense, Johnson was incarcerated at TDCJ's Ferguson Unit. The evidence reflects that Johnson punched correctional officer Christina Genco in the jaw with his fist. He then drug her into the dayroom for that cell block and took her to a bench where he held her with a piece of glass against her neck. As other correctional officers surrounded them, Genco was able to pry the glass away from her neck. One of the officers sprayed Johnson with "COP," which is similar to mace or pepper spray, and

the others then took hold of Johnson and escorted Genco to the prison infirmary. The blow to Genco's jaw caused a fracture of the mandible near the cleft of her chin.

Christopher Smith was the only TDCJ employee who witnessed the assault outside the dayroom. He saw Johnson punch Genco in the jaw with a closed fist and then drag her into the dayroom. He did not see a piece of glass in Johnson's hand when he hit Genco. David Simmons testified that, when he responded to the call for assistance, he saw Johnson on the bench holding Genco in a head lock with a piece of glass to her throat. Nicholas Blazek similarly testified that he initially observed Johnson in the corner of the dayroom with the piece of glass to Genco's throat.

When Frances McCormick responded, she saw Johnson dragging Genco into the dayroom. McCormick testified on direct examination by the prosecutor that she saw Johnson dragging Genco backwards into the dayroom and that he had his hands "[a]round her throat with the piece of glass." On cross-examination, McCormick testified that she did not see a piece of glass in Johnson's hand as he drug Genco to the bench. Rather, she "just kn[ew] he had his hand or something around [Genco's] neck." She did not actually see the piece of glass in his hand until he was at the bench.

David Burns testified that when he arrived he likewise saw Johnson dragging Genco through the dayroom. According to Burns, Johnson had her "in a headlock with a piece of glass applied to the side of her neck." When Burns ordered Johnson to let her go, Johnson replied that he was "going to cut [her] neck." Johnson disregarded three orders to stop as he drug her to the bench.

Genco testified that she does not remember being hit. The last thing she recalls before the assault was telling an inmate the time. "Everything went black," and when she came to, Johnson was dragging her through the dayroom door with his arm tightly around her neck which made it difficult to breath. As she held Johnson's arm and turned her head trying to breath, he yelled at her to "stop grabbing" his arm. She told him she was just trying to breath. Johnson then hit her in the jaw a second time, and she blacked out again. When she came to the second time, she was at the bench at the back of the dayroom, and Johnson was holding the piece of glass against her throat. On cross-examination, she testified that this was the first moment when she noticed that Johnson had a piece of glass.

Besides the broken jaw, Genco suffered minor cuts and abrasions to her neck and four fingers. She had no cuts or abrasions on the outside of her jaw or chin.

After the State rested, Johnson moved for an instructed verdict on the basis that the State presented no evidence that he had used or exhibited the piece of glass during the commission of the assault. Johnson also asked the court to require the State to elect which assault it intended to rely on for prosecution. The court denied both requests.

Johnson testified in his own defense. He admitted that he hit Genco in the jaw with his fist and dragged her to a bench in the dayroom, but he denied hitting her a second time. He also denied holding a piece of broken glass at any point during the incident.

*Aggravated Assault with a Deadly Weapon*

The indictment alleges that Johnson caused bodily injury to Genco "by striking [her] with a hand, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a piece of glass, during the commission of said assault."

Johnson contends that the assault alleged in the indictment was complete after he hit Genco in the chin and that his use of the piece of glass in the dayroom did not happen "during the commission of" the assault. The State responds that "the assault was a series of events, including the blow to the jaw and the verbal death threats and the glass to the throat."

We construe the State's position as an assertion that assault is a "continuing offense." *See Barnes v. State*, 824 S.W.2d 560, 561-62 (Tex. Crim. App. 1991). In determining whether theft is a continuing offense for limitations purposes, the Court of Criminal Appeals observed, "Generally, when each of the elements of a crime have [sic] occurred, the crime is complete." *Id.* at 562. Relying on a decision of the United States Supreme Court, the Court recognized that only in "limited circumstances" will an offense be construed as continuing in nature and held that an offense should not be so construed "unless the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime is such that [the Legislature] must assuredly have intended that it be treated as a continuing one." *Id.* (quoting *Toussie v. United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156 (1970)). Under this test and for the reasons set forth below, we hold that aggravated assault is not a "continuing offense."

Because the indictment alleges that Johnson assaulted Genco by "striking [her] with a hand," this is the "offense" the State had to prove. The deadly weapon allegation is consistent with section 22.02(a)(2) of the Penal Code which proscribes the use or exhibition of a deadly weapon "during the commission of the assault."[1] *See* TEX. PEN. CODE ANN. § 22.02(a)(2) (Vernon Supp. 2008). Under the plain language of the indictment and from the statute,[2] the State thus had to prove that Johnson used or exhibited the piece of glass "during the commission of the assault." *See Curry*, 30 S.W.3d at 404-05. The issue we must determine is how long did the commission of the assault last. Resolution of this issue depends in part on how the charged offense is defined.

Criminal offenses generally involve one of three "conduct elements." *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Underwood v. State*, 176 S.W.3d 635, 641-42 (Tex. App.—El Paso 2005, pet. ref'd); *Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001, pet. ref'd). Those elements are: (1) the nature of the

---

[1]    According to our research, statutes governing the use or exhibition of a deadly weapon may be divided in three categories: (1) those which, like section 22.02(a)(2), proscribe the use or exhibition of a deadly weapon "during the commission" of the offense; *see* TEX. PEN. CODE ANN. § 20.04(b) (Vernon 2003), § 22.02(a)(2) (Vernon Supp. 2008), § 30.05(d)(2) (Vernon Supp. 2008); (2) those which proscribe the use or exhibition of a deadly weapon "in the course of the same criminal episode"; *id.* § 22.021(a)(2)(A)(iv) (Vernon Supp. 2008); and (3) those which proscribe the use or exhibition of a deadly weapon "during the commission of the offense or during immediate flight following the commission of the offense." *Id.* § 12.35(c)(1) (Vernon Supp. 2008); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.291(b)(2)(B) (Vernon 2005), art. 42.12, § 3g(a)(2) (Vernon Supp. 2008).

[2]    In construing a statute, we must apply the plain meaning of the statute unless it is ambiguous or the interpretation would lead to absurd results. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Id.* An offense may involve more than one of these elements. *Id.*

The conduct elements are generally examined in two contexts. First, it is important to define the applicable conduct element because this is the element of the offense to which the appropriate culpable mental state applies. *Id.* For example, if bodily injury is the alleged result of the defendant's conduct, the State must prove that the defendant intentionally, knowingly (or recklessly) caused that injury. *See, e.g., Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988); *Peterson v. State*, 836 S.W.2d 760, 765 (Tex. App.—El Paso 1992, pet. ref'd); *Sneed v. State*, 803 S.W.2d 833, 835-36 (Tex. App.—Dallas 1991, pet. ref'd).

The second context in which these conduct elements are considered is to determine whether the offense is "complete" for Double Jeopardy purposes. Thus, it has been held that aggravated assault is a result-oriented offense which is "complete with the injury of a single individual." *Phillips v. State*, 787 S.W.2d 391, 395 (Tex. Crim. App. 1990); *In re K.W.G.*, 953 S.W.2d 483, 486 (Tex. App.—Texarkana 1997, pet. denied). This second context is more pertinent to our inquiry.

Aggravated assault has not always been classified as a result-oriented offense. Courts have, however, consistently classified aggravated assault by causing serious bodily injury under section 22.02(a)(1) as a result-oriented offense. *Landrian v. State*, No. PD-1561-07, 2008 WL 4489254, at *1 (Tex. Crim. App. Oct. 8, 2008); *Phillips*, 787 S.W.2d at 395; *Hall v. State*, 145 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.); *see also*

*Peterson*, 836 S.W.2d at 765 (former offense of aggravated assault on peace officer by causing bodily injury is result-oriented); *Sneed*, 803 S.W.2d at 835 (same).

Conversely, aggravated assault by use of a deadly weapon under section 22.02(a)(2) has been classified as a conduct-oriented offense. *Landrian*, 2008 WL 4489254, at *8 (Price, J., concurring); *Hall*, 145 S.W.3d at 758 (citing *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.)). We do not wholly agree with this characterization. Rather, we hold that aggravated assault with a deadly weapon under section 22.02(a)(2) is an offense which combines more than one "conduct element" and that the primary focus of the offense (result-of-conduct or nature-of-conduct) will vary depending on the nature of the underlying assault. *Cf. Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) ("capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct").

Thus, when assault by threat is alleged, as in *Hall* and *Guzman*, the focus is on the nature of the defendant's conduct, rather than the result of his conduct. *See Hall*, 145 S.W.3d at 758-59; *Guzman*, 988 S.W.2d at 887. But when as here it is alleged that the defendant caused bodily injury, the primary focus remains on the result of the defendant's conduct, even if he uses or exhibits a deadly weapon during the commission of the assault. *See Landrian*, 2008 WL 4489254, at *1 ("The gravamen of this result-oriented offense is 'causing bodily injury.'"); *cf. Patrick*, 906 S.W.2d at 491. Therefore, we hold that aggravated assault by causing bodily injury, accompanied by the use or exhibition of a deadly weapon, is a result-oriented offense which also

includes a nature-of-conduct element, namely, the defendant's use or exhibition of the deadly weapon.

Because the focus of the offense remains on the result and because the statute requires that a deadly weapon be used or exhibited "during the commission of the assault," the evidence must show that the defendant used or exhibited the weapon at some point at or before the offense is complete (*i.e.*, at or before the time the complainant sustains bodily injury). *See Phillips*, 787 S.W.2d at 395; *K.W.G.*, 953 S.W.2d at 486; *cf. Curry*, 30 S.W.3d at 406 (because "[a]n abduction is a continuous, ongoing event," the jury could find that the defendant used or threatened to use deadly force at any point during the course of the abduction). This interpretation finds support in at least two cases which have focused on the "during the commission" language.

In *Johnson v. State*, the Court of Criminal Appeals reviewed a jury verdict to determine whether the jury's answers regarding Johnson's use of a deadly weapon were fatally conflicting. 777 S.W.2d 421, 421 (Tex. Crim. App. 1989). There, the jury found Johnson guilty of aggravated sexual assault while using or exhibiting a deadly weapon "in the course of the same criminal episode." *Id.* at 422. However, the jury refused to find in response to a special issue that he used or exhibited a deadly weapon "in the commission of the offense." *Id.*[3]

According to the testimony, Johnson accosted the complainant at gunpoint and ordered her into his taxi. He drove her to several locations before parking at an

---

[3]    According to the lower court's opinion, this special issue was submitted under article 42.12, § 3g of the Code of Criminal Procedure to determine Johnson's parole eligibility. *See Johnson v. State*, 738 S.W.2d 307, 308 (Tex. App.—Houston [14th Dist.] 1987), *rev'd*, 777 S.W.2d 421 (Tex. Crim. App. 1989).

apartment complex where he sexually assaulted her. She did not see the gun during the sexual assault. *Id.* The Court of Criminal Appeals explained why the jury's findings were not in conflict.

> It is rational to find that the jury differentiated as to the meaning and substance between these two submissions simply because they had already determined that appellant had exhibited or used a deadly weapon during the "criminal episode," and was guilty of aggravated sexual assault, and then immediately thereafter they were asked if the appellant used or exhibited a deadly weapon during the "commission of the offense."

> It is readily apparent that a juror could rationally interpret this to mean that a further disparate determination on the deadly weapon issue was necessary. It is reasonable to find that the jury correctly determined the appellant had exhibited a deadly weapon during the course of the criminal conduct in question, *i.e.* during the "criminal episode," but that he did not exhibit the deadly weapon during the actual physical sexual attack itself, *i.e.* during the "commission of the offense." Under this reasonable explanation, the jury's verdict and their answer to the special issue are not in conflict.

*Id.* at 423.

And in *Wade v. State*, this Court focused on the term "and" as used in section 22.02(a)(2) where the statute declares that it is an offense to assault someone "and" use or exhibit a deadly weapon "during the commission of the assault." *Wade v. State*, 951 S.W.2d 886, 889 (Tex. App.—Waco 1997, pet. ref'd) (citing TEX. PEN. CODE ANN. § 22.02(a)(2)). We explained that the term "and" here means "as well as" or "at the same time." *Id.* We observed that under this statute the deadly weapon "must be used [or exhibited] at the same time as the assault." *Id.*

The definitions of the terms "use" and "exhibit" in this context are well established.

> [T]he word "use" typically means that a deadly weapon must be "utilized, employed, or applied in order to achieve its intended result 'the commission of a felony offense or during immediate flight therefrom,'" that "use" could mean "any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony."

*Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). "The word 'exhibit,' however, requires a weapon to be 'consciously shown, displayed, or presented to be viewed.'" *Id.*

To summarize, the indictment alleges that Johnson caused bodily injury to Genco by striking her with his hand and that he used or exhibited a deadly weapon (a piece of glass) during the commission of this assault. Therefore, to obtain a conviction under this indictment, the evidence must show that Johnson used or exhibited the piece of glass "at the same time as" he struck Genco with his hand. *See Wade*, 951 S.W.2d at 889; *see also Johnson*, 777 S.W.2d 423.

*Application*

Viewed in the light most favorable to the verdict, the record contains evidence that Johnson struck Genco with his hand two times during the episode. From Genco's testimony, she "blacked out" both times. Thus, the record contains evidence of two separate assaults by Johnson which resulted in bodily injury to Genco and which are consistent with (and thus "authorized by") the allegations of the indictment. *See Malik*, 953 S.W.2d at 240; *Lockwood*, 237 S.W.3d at 431; *Sartain*, 228 S.W.3d at 421; *see also Curry*, 30 S.W.3d at 404. But did Johnson use or exhibit the piece of glass during the commission of either assault?

Juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 217 S.W.3d at 15. Viewed in the light most favorable to the verdict, the jurors could reasonably infer that Johnson already had the piece of glass in his possession when he hit Genco in the jaw the first time. However, it would be mere speculation, unsupported by any direct or circumstantial evidence, for a juror to conclude that Johnson used or exhibited the piece of glass during the commission of this assault.

By contrast, Burns testified that Johnson had Genco "in a headlock with a piece of glass applied to the side of her neck" as he dragged her through the dayroom. McCormick similarly testified that she saw Johnson dragging Genco through the dayroom with his hands "[a]round her throat with the piece of glass." The fact that Genco does not recall Johnson wielding a piece of glass at this juncture is not dispositive. *Cf. Herring v. State*, 202 S.W.3d 764, 766 (Tex. Crim. App. 2006) (evidence legally sufficient to prove use of deadly weapon where defendant told victim he had a knife and threatened to kill her, even though she never saw knife). Therefore, viewing the testimony in the light most favorable to the verdict, the jurors could reasonably infer that Johnson was holding the glass against Genco's neck when he hit her the second time.

For these reasons, we hold that the evidence is legally sufficient to support the jury's finding that Johnson used or exhibited a deadly weapon during the commission of the assault. Accordingly, we overrule Johnson's first issue.

## Impeachment Evidence

Johnson contends in his second issue that the court abused its discretion by allowing the State to impeach him with his 2002 conviction for aggravated assault of a public servant because the probative value of this evidence is outweighed by the danger of unfair prejudice.

We review a court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Evidence of a prior conviction is admissible to impeach a witness's testimony if the conviction is for a felony or a crime involving moral turpitude and the court determines that the probative value of this evidence outweighs its prejudicial effect.[4] TEX. R. EVID. 609(a). The familiar *Theus* factors are employed to conduct this balancing process. *Berry v. State*, 179 S.W.3d 175, 180 (Tex. App.—Texarkana 2005, no pet.) (citing *Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992)); *Moore v. State*, 143 S.W.3d 305, 312-13 (Tex. App.—Waco 2004, pet. ref'd) (same). Those factors include: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense, and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and

---

[4]    If more than ten years have elapsed since the date of the conviction or of the witness's release from confinement for that conviction, whichever is later, then the conviction is admissible only if the court determines that the probative value of the conviction "*substantially* outweighs its prejudicial effect." TEX. R. EVID. 609(b) (emphasis added).

(5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880; *Berry*, 179 S.W.3d at 180; *Moore*, 145 S.W.3d at 312-13.

Here, because the prior conviction involves violence rather than deception, the impeachment value of the conviction is low, and thus the first factor does not favor the admissibility of the evidence. *See Theus*, 880 S.W.2d at 881; *Berry*, 179 S.W.3d at 180; *DeLeon v. State*, 126 S.W.3d 210, 215 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd, untimely filed). Johnson concedes that the temporal proximity of the prior offense favors its admission. *See Theus*, 880 S.W.2d at 881; *Berry*, 179 S.W.3d at 180.

Regarding the similarity of the prior offense, the State states that "it is impossible to say exactly how similar the offenses are" because "no details of the prior offense were given." However, Johnson testified under cross-examination that the prior offense was an assault on a prison guard. Thus, because of the similarity of the offenses, this factors weighs against the admissibility of the prior offense. *See Berry*, 179 S.W.3d at 180; *DeLeon*, 126 S.W.3d at 215.

We agree with the State, however, that the final two factors favor the admissibility of the evidence. The only disputed issue at trial was whether Johnson used or exhibited a piece of glass as a deadly weapon during the commission of the assault. Virtually all of the State's witnesses testified that he did. Johnson testified that he did not. The complainant Genco did not recall Johnson using or exhibiting the piece of glass either time he struck her with his hand. The physical evidence does not support the State's theory that he used or exhibited a piece of glass "during the commission" of either assault. Therefore, Johnson's testimony and his credibility were

important because his defensive theory pitted his testimony and the physical evidence which tended to support his testimony against the testimony of the State's witnesses. *See Theus*, 845 S.W.2d at 881; *Berry*, 179 S.W.3d at 180.

Accordingly, we cannot say that the court abused its discretion by allowing the State to impeach Johnson with this prior conviction. Thus, we overrule Johnson's second issue.

We affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed October 22, 2008
Publish
[CRPM]

* ("Chief Justice Gray concurs in the judgment which affirms Johnson's conviction. He joins no part of the opinion of the Court. A separate opinion will not issue. He notes, however, the efforts to dissect the event into discrete parts is unnecessary and will be an issue we will undoubtedly have to revisit.")