

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00052-CV

## IN THE MATTER OF L.A., A JUVENILE

### From the County Court at Law No. 2
### Johnson County, Texas
### Trial Court No. J04609

## MEMORANDUM  OPINION

A jury found that L.A. had engaged in delinquent conduct by committing an aggravated assault against her stepfather.  The court committed her to the Texas Youth Commission for an indeterminate sentence.  L.A. contends among other things that the evidence is legally and factually insufficient to prove that she used a deadly weapon "during the commission of the assault."  We will reverse and remand.

### Sufficiency of the Evidence

L.A. contends in her first issue that the court erred by denying her motion for instructed verdict in which she argued that the State failed to produced any evidence that she "used or exhibited a deadly weapon while hitting [the complainant] on the

head as specifically charged in the petition."[1]  She claims in her second issue that her right to due process was violated because the evidence is legally and factually insufficient.  And she contends in her fifth issue, that the court abused its discretion by denying her motion for new trial premised primarily on legal and factual insufficiency.

In evaluating the legal sufficiency of the evidence in a juvenile delinquency appeal, we view all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See In re K.B.*, 143 S.W.3d 194, 199 (Tex. App.—Waco 2004, no pet.).  "This 'familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)).

In evaluating the factual sufficiency of the evidence, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust.  *See In re M.M.L.*, 241 S.W.3d 546, 558 (Tex. App.—Amarillo 2006, no pet.); *In re S.S.*, 167 S.W.3d 108, 112-13 (Tex. App.—Waco 2005, no pet.).

---

[1]     L.A.'s first issue challenges the legal sufficiency of the evidence.  *See Hyman Farm Serv., Inc. v. Earth Oil & Gas Co.*, 920 S.W.2d 452, 455 (Tex. App.—Amarillo 1996, no writ) ("We review the denial of an instructed verdict by a legal sufficiency or 'no evidence' standard of review.").

The State's petition alleges in pertinent part that L.A. did "intentionally or knowingly threaten Cristobal Lisboa with imminent bodily injury by hitting him in the head and did then and there use or exhibit a deadly weapon, to wit: a large kitchen knife, during the commission of said assault."

This Court has recently addressed what must be proved to establish that a deadly weapon was used or exhibited "during the commission" of an assault. *See Johnson v. State*, 271 S.W.3d 756, 760-63 (Tex. App.—Waco 2008, pet. ref'd). The evidence must show that the deadly weapon was "used [or exhibited] at the same time as the assault." *Id.* at 762 (quoting *Wade v. State*, 951 S.W.2d 886, 889 (Tex. App.—Waco 1997, pet. ref'd)). Defining "when" the assault occurred depends in part on whether the offense alleged is a result-oriented offense or a nature-of-conduct offense. *Id.* at 760-61. But it also depends in part on the factual allegations of the charging instrument. *Id.* at 760.

We explained that there are three categories of penal statutes proscribing the use or exhibition of a deadly weapon. *Id.* at 760 n.1.

> According to our research, statutes governing the use or exhibition of a deadly weapon may be divided in three categories: (1) those which, like section 22.02(a)(2), proscribe the use or exhibition of a deadly weapon "during the commission" of the offense; *see* Tex. Pen. Code Ann. § 20.04(b) (Vernon 2003), § 22.02(a)(2) (Vernon Supp. 2008), § 30.05(d)(2) (Vernon Supp. 2008); (2) those which proscribe the use or exhibition of a deadly weapon "in the course of the same criminal episode"; *id.* § 22.021(a)(2)(A)(iv) (Vernon Supp. 2008); and (3) those which proscribe the use or exhibition of a deadly weapon "during the commission of the offense or during immediate flight following the commission of the offense." *Id.* § 12.35(c)(1) (Vernon Supp. 2008); *see also* Tex. Code Crim. Proc. Ann. art. 17.291(b)(2)(B) (Vernon 2005), art. 42.12, § 3g(a)(2) (Vernon Supp. 2008).

*Id.* The statute applicable to L.A.'s prosecution lies in the first category. *See* TEX. PEN. CODE ANN. § 22.02(a)(2).

The petition alleges that L.A. assaulted Lisboa by threatening him with imminent bodily injury. This is a nature-of-conduct offense which can be considered a continuing offense, depending on what threatening conduct is alleged. *See Johnson*, 271 S.W.3d at 761; *Hall v. State*, 145 S.W.3d 754, 758-59 (Tex. App.—Texarkana 2004, no pet.). Because the petition alleges that L.A. threatened Lisboa "by hitting him in the head," the petition alleges a single, discrete threatening act rather than a continuous offense. *Cf. Hall*, 145 S.W.3d at 759 (indictment alleged that defendant threatened complainant with imminent bodily injury and used and exhibited a deadly weapon during the commission of the assault but did not allege with any more specificity how defendant threatened complainant). Thus, the State had to present evidence that she used or exhibited the kitchen knife "at the same time as" she hit him in the head. *See Johnson*, 271 S.W.3d at 762; *Wade*, 951 S.W.2d at 889.

Three witnesses presented testimony pertinent to this issue. Lisboa testified that they had "a big argument" and then L.A. "punched [him] in the forehead." They continued arguing as his wife (and L.A.'s mother) called the police. A few moments later, "she grabbed the knife" and raised it up pointing in his direction. She was about five feet away from him at the time. Lisboa left the kitchen to get a stick for his own defense. When he returned to the kitchen, L.A. had gone into her bedroom.

Deputy Kenneth Bartlett testified on direct examination that he was told L.A. "tried to stick [Lisboa] with the knife." On cross-examination, however, he clarified that he was told L.A. hit Lisboa with her hand and then grabbed the knife. No one reported to Bartlett that L.A. had any physical contact with Lisboa when she held the knife.

Deputy Dusty Ford testified without objection that he had been informed L.A. displayed the knife "in a threatening manner." Like Deputy Bartlett, however, he agreed on cross-examination that L.A. first hit Lisboa and then later grabbed the knife.

Viewing the evidence in a light most favorable to the verdict and focusing in particular on the deputies' testimony on direct examination, the evidence is legally sufficient to establish that L.A. used or exhibited a deadly weapon "during the commission" of the assault. *See Klein*, 273 S.W.3d at 302 (legally sufficiency standard allows trier of fact to resolve conflicts in testimony).

Regarding factual sufficiency, the State contends that the evidence is sufficient because L.A.'s brandishing of the knife was "part of the same criminal activity." However, this contention is misplaced because neither of the latter two categories of deadly weapon statutes[2] we identified in *Johnson* are applicable. *See Johnson*, 271 S.W.3d at 760 n.1. Rather, the question is whether the evidence shows that L.A. brandished the knife "at the same time as" she hit Lisboa in the head. *Id.* at 762; *Wade*, 951 S.W.2d at 889.

---

[2]    The latter two categories are statutes proscribing the use or exhibition of a deadly weapon "in the course of the same criminal episode" or "during immediate flight following the commission of the offense." *See Johnson v. State*, 271 S.W.3d 756, 760 n.1 (Tex. App.—Waco 2008, pet. ref'd).

When the deputies' testimony on direct examination is considered with the other testimony referred to above, we must conclude that the conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust regarding whether L.A. used or exhibited a deadly weapon "during the commission" of the assault. *See M.M.L.*, 241 S.W.3d at 558; *S.S.*, 167 S.W.3d at 112-13. Thus, we hold that the evidence is factually insufficient.

We overrule L.A.'s first issue and those portions of her second and fifth issues challenging the legal sufficiency of the evidence, but we sustain those portions of her second and fifth issues challenging the factual sufficiency of the evidence. We do not address her remaining issues.

We reverse the judgment and remand this cause for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
        (Chief Justice Gray dissenting with note)*
Reversed and remanded
Opinion delivered and filed June 10, 2009
[CV06]

\* (Chief Justice Gray dissents. A separate opinion will not issue. He notes, however, that what he forecast in the case relied upon by the Court, and the Court's reliance on a footnote therein, is now upon us. *See Johnson v. State*, 271 S.W.3d 756, 764 n.\* (Tex. App.—Waco 2008, pet. ref'd) (Gray, C.J., concurring).)