IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00052-CV

 

In
the Matter of L.A., a Juvenile

 

 

 

 



From the County Court
at Law No. 2

Johnson County, Texas

Trial Court No. J04609

 



MEMORANDUM  Opinion



 








            A jury found that L.A. had engaged in delinquent conduct by committing an aggravated assault against her
stepfather.  The court committed her to the Texas Youth Commission for an
indeterminate sentence.  L.A. contends among other things that the evidence is
legally and factually insufficient to prove that she used a deadly weapon
“during the commission of the assault.”  We will reverse and remand.

Sufficiency of the Evidence

            L.A. contends in her first
issue that the court erred by denying her motion for instructed verdict in
which she argued that the State failed to produced any evidence that she “used
or exhibited a deadly weapon while hitting [the complainant] on the head as
specifically charged in the petition.”[1] 
She claims in her second issue that her right to due process was violated
because the evidence is legally and factually insufficient.  And she contends
in her fifth issue, that the court abused its discretion by denying her motion
for new trial premised primarily on legal and factual insufficiency.     

In evaluating the legal sufficiency of
the evidence in a juvenile delinquency appeal, we view all the evidence in the
light most favorable to the verdict and ask whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  See In re K.B., 143 S.W.3d 194, 199 (Tex. App.—Waco 2004, no pet.). 
“This ‘familiar standard gives full play to the responsibility of the trier of
fact fairly to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.’”  Klein
v. State, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008) (quoting Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979)).

            In evaluating the factual
sufficiency of the evidence, we ask whether a neutral review of all the
evidence, though legally sufficient, demonstrates either that the proof of
guilt is so weak or that conflicting evidence is so strong as to render the
factfinder’s verdict clearly wrong and manifestly unjust.  See In re M.M.L.,
241 S.W.3d 546, 558 (Tex. App.—Amarillo 2006, no pet.); In re S.S., 167
S.W.3d 108, 112-13 (Tex. App.—Waco 2005, no pet.).

            The State’s petition alleges
in pertinent part that L.A. did “intentionally or knowingly threaten Cristobal
Lisboa with imminent bodily injury by hitting him in the head and did then and
there use or exhibit a deadly weapon, to wit: a large kitchen knife, during the
commission of said assault.”

            This Court has recently
addressed what must be proved to establish that a deadly weapon was used or
exhibited “during the commission” of an assault.  See Johnson v. State,
271 S.W.3d 756, 760-63 (Tex. App.—Waco 2008, pet. ref’d).  The evidence must
show that the deadly weapon was “used [or exhibited] at the same time as the
assault.”  Id. at 762 (quoting Wade v. State, 951 S.W.2d 886, 889
(Tex. App.—Waco 1997, pet. ref’d)).  Defining “when” the assault occurred
depends in part on whether the offense alleged is a result-oriented offense or
a nature-of-conduct offense.  Id. at 760-61.  But it also depends in
part on the factual allegations of the charging instrument.  Id. at 760.

            We explained that there are
three categories of penal statutes proscribing the use or exhibition of a
deadly weapon.  Id. at 760 n.1.

            According to our research,
statutes governing the use or exhibition of a deadly weapon may be divided in
three categories: (1) those which, like section 22.02(a)(2), proscribe the use
or exhibition of a deadly weapon “during the commission” of the offense; see
Tex. Pen. Code Ann. § 20.04(b)
(Vernon 2003), § 22.02(a)(2) (Vernon Supp. 2008), § 30.05(d)(2) (Vernon Supp. 2008);
(2) those which proscribe the use or exhibition of a deadly weapon “in the
course of the same criminal episode”; id. § 22.021(a)(2)(A)(iv) (Vernon
Supp. 2008); and (3) those which proscribe the use or exhibition of a deadly
weapon “during the commission of the offense or during immediate flight
following the commission of the offense.”  Id. § 12.35(c)(1) (Vernon
Supp. 2008); see also Tex. Code
Crim. Proc. Ann. art. 17.291(b)(2)(B) (Vernon 2005), art. 42.12, §
3g(a)(2) (Vernon Supp. 2008).

 

Id.  The statute applicable to L.A.’s prosecution lies in the
first category.  See Tex. Pen.
Code Ann. § 22.02(a)(2).

            The petition alleges that L.A. assaulted Lisboa by threatening him with imminent bodily injury.  This is a
nature-of-conduct offense which can be considered a continuing offense,
depending on what threatening conduct is alleged.  See Johnson, 271
S.W.3d at 761; Hall v. State, 145 S.W.3d 754, 758-59 (Tex.
App.—Texarkana 2004, no pet.).  Because the petition alleges that L.A. threatened Lisboa “by hitting him in the head,” the petition alleges a single,
discrete threatening act rather than a continuous offense.  Cf. Hall,
145 S.W.3d at 759 (indictment alleged that defendant threatened complainant with
imminent bodily injury and used and exhibited a deadly weapon during the
commission of the assault but did not allege with any more specificity how
defendant threatened complainant).  Thus, the State had to present evidence
that she used or exhibited the kitchen knife “at the same time as” she hit him
in the head.  See Johnson, 271 S.W.3d at 762; Wade, 951 S.W.2d at
889.

            Three witnesses presented
testimony pertinent to this issue.  Lisboa testified that they had “a big
argument” and then L.A. “punched [him] in the forehead.”  They continued
arguing as his wife (and L.A.’s mother) called the police.  A few moments
later, “she grabbed the knife” and raised it up pointing in his direction.  She
was about five feet away from him at the time.  Lisboa left the kitchen to get
a stick for his own defense.  When he returned to the kitchen, L.A. had gone into her bedroom.

            Deputy Kenneth Bartlett
testified on direct examination that he was told L.A. “tried to stick [Lisboa]
with the knife.”  On cross-examination, however, he clarified that he was told L.A. hit Lisboa with her hand and then grabbed the knife.  No one reported to Bartlett that L.A. had any physical contact with Lisboa when she held the knife.

            Deputy Dusty Ford testified
without objection that he had been informed L.A. displayed the knife “in a
threatening manner.”  Like Deputy Bartlett, however, he agreed on
cross-examination that L.A. first hit Lisboa and then later grabbed the knife.

            Viewing the evidence in a
light most favorable to the verdict and focusing in particular on the deputies’
testimony on direct examination, the evidence is legally sufficient to
establish that L.A. used or exhibited a deadly weapon “during the commission”
of the assault.  See Klein, 273 S.W.3d at 302 (legally sufficiency
standard allows trier of fact to resolve conflicts in testimony).

            Regarding factual
sufficiency, the State contends that the evidence is sufficient because L.A.’s brandishing of the knife was “part of the same criminal activity.”  However, this
contention is misplaced because neither of the latter two categories of deadly
weapon statutes[2]
we identified in Johnson are applicable.  See Johnson, 271 S.W.3d
at 760 n.1.  Rather, the question is whether the evidence shows that L.A. brandished the knife “at the same time as” she hit Lisboa in the head.  Id. at 762; Wade, 951 S.W.2d at 889.

            When the deputies’ testimony
on direct examination is considered with the other testimony referred to above,
we must conclude that the conflicting
evidence is so strong as to render the jury’s verdict clearly wrong and
manifestly unjust regarding whether L.A.
used or exhibited a deadly weapon “during the commission” of the assault.  See M.M.L., 241 S.W.3d at 558;
S.S., 167 S.W.3d at 112-13.  Thus, we hold that the evidence is factually
insufficient.

            We overrule L.A.’s first issue and those portions of her second and fifth issues challenging the legal
sufficiency of the evidence, but we sustain those portions of her second and
fifth issues challenging the factual sufficiency of the evidence.  We do not
address her remaining issues.

We reverse the judgment and remand this
cause for further proceedings consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting with note)*

Reversed and remanded

Opinion
delivered and filed June 10, 2009

[CV06]

 

*           (Chief
Justice Gray dissents.  A separate opinion will not issue.  He notes, however,
that what he forecast in the case relied upon by the Court, and the Court’s
reliance on a footnote therein, is now upon us.  See Johnson v. State,
271 S.W.3d 756, 764 n.* (Tex. App.—Waco 2008, pet. ref’d) (Gray, C.J.,
concurring).)









[1]
              L.A.’s first issue
challenges the legal sufficiency of the evidence.  See Hyman Farm Serv.,
Inc. v. Earth Oil & Gas Co., 920 S.W.2d 452, 455 (Tex. App.—Amarillo
1996, no writ) (“We review the denial of an instructed verdict by a legal
sufficiency or ‘no evidence’ standard of review.”).

 





[2]
              The latter two
categories are statutes proscribing the use or exhibition of a deadly weapon “in
the course of the same criminal episode” or “during immediate flight following the
commission of the offense.”  See Johnson v. State, 271 S.W.3d 756, 760
n.1 (Tex. App.—Waco 2008, pet. ref’d).