In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00260-CR**
_____

**WILLIAM LEE LUNDAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-20116**

**MEMORANDUM OPINION**

A jury convicted appellant William Lee Lunday of aggravated assault against a public servant, and the trial court assessed punishment at twenty years of confinement. In his sole issue, Lunday challenges the sufficiency of the evidence. We affirm the trial court's judgment of conviction.

THE EVIDENCE

Deputy Dustin Unruh of the Jefferson County Sheriff's Office testified that on June 8, 2014, he was dispatched to an address in Jefferson County regarding a physical disturbance between a male and a female. Deputy Unruh testified that he

1

was in uniform and was driving his patrol car. Upon arriving at the address, Deputy Unruh saw Lunday in a confrontation with a female in front of a trailer, and Lunday's hands were around the female. Deputy Unruh testified that when he got out of his patrol car, Lunday removed his hands from the female and "all of his tension was directed towards me at that point." Deputy Unruh asked Lunday to come to him, and Lunday began yelling at Deputy Unruh. Deputy Unruh explained that he wanted to pat Lunday down for weapons and make the scene safe. Deputy Unruh testified that Lunday began yelling and cursing, and he told Deputy Unruh that the female was his mother. According to Deputy Unruh, Lunday appeared to be upset and angry.

Deputy Unruh testified that when he instructed Lunday to come toward him, Lunday became "more aggressively angry" and pulled an object from his pocket, so Deputy Unruh drew his pistol. Deputy Unruh saw that the object in Lunday's hand was a knife,[1] and he asked to see Lunday's hands and told Lunday to get on the ground. Deputy Unruh testified that he instructed Lunday to show his hands and get on the ground several times, but Lunday did not comply, and Lunday continued to advance toward Deputy Unruh with the knife in his hand "in an aggressive manner." According to Deputy Unruh, Lunday continued to yell and "[h]is emotions were clearly high." Deputy Unruh explained that he moved

---

[1]Deputy Unruh testified that a knife is a deadly weapon.

2

backward because he feared that if he had to use deadly force against Lunday, the bullet might hit an innocent person because there were ten to twelve other people, including children, on the scene. Deputy Unruh testified that Lunday continued to use profanity and told Deputy Unruh that "he wasn't going without a bullet in his head or in his chest[.]"

According to Deputy Unruh, Lunday asked him more than once to shoot him, and Deputy Unruh characterized the situation as "suicide by cop." Deputy Unruh explained, "I was in fear that he would take serious matters into his own hands and attack me or turn around and maybe grab a child or any other of the innocent civilians behind him." Deputy Unruh testified that during the encounter, Lunday would sometimes calm down briefly, but would then become aggressive and continue to advance toward him. Deputy Unruh became more aggressive in giving commands to Lunday, and Lunday eventually threw the knife to the side and got on his knees next to Deputy Unruh's patrol car. Deputy Unruh described Lunday's demeanor at that point as "crying" and "apologetic." The State rested at the conclusion of Deputy Unruh's testimony.

Lunday's mother, Melody, testified that she called 911 because Lunday was withdrawing from methamphetamine and "tripping[,]" and she felt that she was in danger and needed to get away from Lunday. Melody testified that Lunday was hallucinating and had physically assaulted her. Melody testified that Lunday told

3

Deputy Unruh, "You might as well go ahead and kill me, bro. I want to die now." Melody explained that Lunday simply wanted to die and did not want to hurt anyone.

## LUNDAY'S ISSUE

In his sole appellate issue, Lunday challenges the sufficiency of the evidence supporting his conviction. Specifically, Lunday argues that the evidence "overwhelmingly established that appellant engaged in behavior with the intent to cause a public servant, the investigating officer, to kill him." Lunday contends that the evidence "fails to sufficiently support the allegations in the indictment that appellant intentionally and knowingly threatened imminent bodily injury to the officer."

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

4

facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

A person commits the offense of aggravated assault of a public servant if he intentionally or knowingly threatens another with imminent bodily injury, uses or exhibits a deadly weapon while committing the assault, and the victim of the offense is a public servant lawfully discharging an official duty. Tex. Penal Code Ann. §§ 22.01(a)(2) (West Supp. 2015), 22.02(a)(2), (b)(2)(B) (West 2011). Aggravated assault of a public servant by threat is a conduct-oriented offense that has no required result. *See Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008); *Hall v. State*, 145 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.). To prove the required culpable mental state of intentionally or knowingly, the State had to show either that it was Lunday's "conscious objective or desire to engage in the conduct" or Lunday was aware of the nature of, or circumstances surrounding, his conduct. *See* Tex. Penal Code Ann. § 6.03(a), (b) (West 2011). The jury may infer intent from circumstantial evidence, such as the defendant's

5

acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004).

Although the jury heard evidence from which it could have inferred that Lunday was attempting to commit "suicide by cop," such an inference focuses on the result of his actions rather than the nature of his conduct. *See Landrian*, 268 S.W.3d at 540; *Hall*, 145 S.W.3d at 758. An inference of "suicide by cop" does not exclude an inference that Lunday intentionally or knowingly used a deadly weapon to threaten Deputy Unruh with imminent bodily injury because if Lunday's objective was to force Deputy Unruh to kill him, Lunday had to demonstrate a credible threat that would justify Deputy Unruh's use of deadly force. *See Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1986). Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support Lunday's conviction. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B); *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. Accordingly, we overrule Lunday's sole issue and affirm the trial court's judgment of conviction.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

6

Submitted on April 28, 2016
Opinion Delivered May 11, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.