**In the Matter of K.B., A Juvenile.**

**No. 10–02–00347–CV.**

Court of Appeals of Texas, Waco.

June 16, 2004.

Duane Ronson Graeff, Corbin & Pritchard, Belton, for appellant.

Edwin E. Powell, Jr., County Atty. for Coryell County, Gatesville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

K.B. was charged as a juvenile with aggravated assault with a deadly weapon, to wit, a metal pipe. In his delinquency adjudication, a jury found the allegations to be true. K.B. complains that (1) the trial court erred by omitting an essential element of the offense from the charge, (2) there is legally and factually insufficient evidence to support the verdict, (3) the court erred by omitting certain instructions and definitions from the charge, and (4) he was deprived of effective assistance of counsel. We reverse, reform in part, and remand in part.

Because K.B.'s second issue is dispositive in this case, we will not address the other issues before us. K.B. argues in his second issue that the evidence is legally and factually insufficient because the jury took into account uncorroborated accomplice testimony that should not have been considered. In the alternative, K.B. argues that, even with the accomplice testimony, the evidence is legally and factually insufficient.

## BACKGROUND

The evidence in this case is disputed on many levels, but the basic premise follows that of a typical schoolyard fight. One or more neighborhood teenage boys fought with Benit Kutchka behind an apartment complex while other teenagers gathered to watch. Once the police arrived upon the scene, the children fled. Kutchka, nineteen and in the military, had lacerations on his back, neck, and head, and suffered a concussion. Police found a brick and a broken piece of wood at the scene of the fight. After an investigation, the police arrested Adam (eighteen) Michael (sixteen), Jeremy (sixteen), Alex (thirteen), and K.B. (twelve) and charged them all with aggravated assault. Adam pled guilty; Alex was acquitted in a bench trial; and the State dismissed the charges against Jeremy and Michael in exchange for their testimony against K.B. A jury found that K.B. had engaged in delinquent conduct as alleged. The testimony of the different eyewitnesses and accomplices is as follows:

### Tara

Tara, a fourteen-year-old girl at the time of the incident, was with K.B. the afternoon of the fight. She testified that they were at the pond behind the apartment complex where Kutchka lives. Kutchka was at the pond with his wife, his infant daughter, and his wife's friend. K.B. was making bird noises that Kutchka thought were directed at his wife. Kutchka asked K.B. to stop making the sound, and K.B. refused. An argument ensued. As K.B. and Tara were leaving, Kutchka challenged K.B. to a fight. K.B. and Tara went to K.B.'s house where K.B. called his older brother, Adam, and told him of the incident. Tara testified that K.B. had two wrenches in his pocket. Tara went home and did not witness the fight.

### Alex

Alex, thirteen at the time of the fight, was acquitted in a bench trial. He testified that on the morning of the fight Kutchka hit him in the back with a pellet gun. It was this incident coupled with the challenge Kutchka had made to K.B. that prompted Alex, K.B., Adam, Jeremy, and Michael to go to the pond to talk to Kutchka that night. Alex said that he was not involved in the fight but witnessed the fight from a basketball court next to the pond. He testified that a brick hit Kutchka and then Kutchka threw the first punch at Jeremy but missed. Jeremy punched Kutchka causing Kutchka to fall to the ground. While they were fighting, Adam hit Kutchka with a bamboo stick. K.B. was not involved in the fight, but was standing ten to fifteen feet away. Alex never saw a metal pipe during the fight, only a brick and a bamboo stick. He saw nothing in K.B.'s hands at the time of the fight, but on several prior occasions he had seen K.B. carrying wrenches.

### Michael

The charges against Michael were dismissed on the day of K.B.'s trial in exchange for his testimony. Michael, sixteen at the time of the incident, testified that K.B. called him on the day of the fight and told him that Kutchka was "messing with him." When they went to talk to Kutchka, he stayed behind with Alex and watched the fight. A brick flew through the air, but he did not see who threw it, or if it hit Kutchka. Kutchka threw a punch at Jeremy, but missed. Then Jeremy punched Kutchka and knocked him down. Adam hit Kutchka across the neck with a two-by-four, and K.B. kicked Kutchka in the head, but Michael testified that K.B. did not strike Kutchka with anything. K.B. had no metal pipe or wrenches in his hands, but he had two wrenches in his pocket at

his house before the fight. Despite his testimony, Michael did not speak of K.B. being involved in the fight in any of his prior statements to police.

### Jeremy

As with Michael, the State dismissed the charges against Jeremy in return for his testimony at K.B.'s trial. Jeremy, sixteen at the time of the incident, testified that he was with Adam when K.B. called to tell them of the afternoon incident with Kutchka. Jeremy and Adam left to go to K.B.'s house, going through Kutchka's apartment complex on the way. As they ran through the complex, Kutchka yelled at them, "Don't run, be a man." Jeremy turned to look at him and said, "You don't know me." Kutchka said, "Oh" and they continued running. After spending time at Adam and K.B.'s house, they decided to walk down to the pond to talk to Kutchka. Jeremy said they were mad at Kutchka for picking on little kids and were probably going to fight him. However, K.B. did not ask Jeremy to fight Kutchka for him.

At the pond, Adam asked Kutchka why he was trying to fight little kids. While talking to Kutchka, Jeremy saw a brick flying between himself and Adam. The brick hit Kutchka; Kutchka threw a punch at Jeremy but missed; and then Jeremy knocked Kutchka down. Jeremy testified that the fight was between Kutchka and himself. He did not see Adam or K.B. involved in the fight. He testified that a metal pipe almost hit him while he was fighting Kutchka. After the fight he threw the metal pipe in a field. After he was arrested, Jeremy testified that he called K.B. and told him that he was being charged with assaulting Kutchka with a pipe. K.B. asked why Jeremy was being charged with that offense because K.B. was the one with the metal pipe, and during the fight he almost hit Jeremy with it.

### Kutchka

Kutchka testified that before the fight, he had an argument with a kid making noises, but he did not know if that kid was K.B. That night a group of kids started coming towards him saying that they were going to molest his infant daughter. Eight to ten of them encircled him, and then the fight began. A brick was thrown at his head, but he did not see who threw it. He punched the person that threw the brick and remembers being hit with a piece of wood, but cannot remember anything after that. He testified that he does not remember being hit with a metal pipe or if K.B. was at the fight.

### Laura Kutchka

Laura is Kutchka's twenty-year-old wife. She testified that she did not see K.B. earlier that day. The kid making noises at her was Alex, not K.B. That night, she saw eight to twelve kids all beating her husband. Kutchka was hit with a brick and then fell down. The weapons she saw involved in the fight were a metal pole, a two-by-four, and a brick, but she could not say who was wielding these items. The only one of the boys she could positively identify at the scene was K.B., but she never saw K.B. involved in the fight, or strike Kutchka with a pipe or a wrench. She testified that K.B. approached her after the fight wielding a wrench and threatened her, telling her to move out of the way.

### Florence Baker

Florence is Laura Kutchka's eighteen-year-old friend. She had seen K.B. earlier that day at the pond smoking cigarettes. That night she saw ten to twelve boys at the pond. Two of the boys came toward Kutchka and danced around him like boxers. Then, the two boys jumped Kutchka,

and the rest of the boys attacked. She identified Adam as one of the two boys, but K.B. was not one of the two. K.B. was involved in the fight. She saw him run past her and then jump in with the rest of the boys. She saw him hit Kutchka twice in the chest, but he did not have any weapons. She saw a wrench in the fight, but cannot say who had it. During the fight, she saw Laura Kutchka throw a flashlight at the boys in the fight. In Alex's trial, which occurred ten days before K.B.'s, she identified Alex as the boy she had seen at the pond earlier that day, and as the boy who hit Kutchka twice in the chest.

### Officer Alber

Officer Alber is one of the police officers who arrived at the scene after the fight was over. He testified that a brick was found at the scene along with a broken piece of wood. The wood was veneer-type wood and not a conventional two-by-four. No metal pipe was found at the scene. Kutchka was bleeding but did not require hospitalization.

### Officer Compton

Officer Compton arrested K.B. for his involvement in the assault. The day after the fight, he found two wrenches in K.B.'s pocket during a search incident to an arrest. K.B. said that the wrenches were for his bicycle. When the officer explained why he was there, K.B. responded that he was at home that night. Then K.B. said that he was jumped that night and needed the wrenches to protect himself because a G.I. had shot his friend with a BB gun. At the station, K.B. told the officer, "The GI cut me with a knife, and you say I assaulted him?"

### Adam

Adam, eighteen at the time of the incident, was unavailable for trial, so the defense attorney read his statement into the record before the jury. Adam stated that K.B. called him and told him what happened earlier with Kutchka. He also stated that K.B. was never involved in the fight.

### Angela Kuntz

Angela Kuntz also witnessed the fight. She saw about ten kids approach and argue with Kutchka. A fight ensued. She testified that K.B. did not participate in the fight.

### ACCOMPLICE TESTIMONY

The Texas Family Code does not allow accomplice testimony in adjudication hearings unless it is corroborated. *See* TEX. FAM.CODE ANN. § 54.03(e) (Vernon 2004). Corroboration is sufficient if it tends to connect the juvenile to the delinquent conduct. *Id.* Because section 54.03(e) is similar to article 38.14 of the Code of Criminal Procedure (the criminal accomplice testimony statute), we look to the Texas Court of Criminal Appeals for guidance as to how section 54.03(e) should be interpreted. *In re C.M.G.*, 905 S.W.2d 56, 58 (Tex.App.-Austin 1995, no writ).

We must first ascertain which of the witnesses were accomplices. An accomplice is one who participates in an offense before, during, or after its commission, to the extent that he or she can be charged with the offense or with a lesser-included offense. *Herron v. State*, 86 S.W.3d 621, 631 (Tex.Crim.App.2002); *Hardie v. State*, 79 S.W.3d 625, 629 (Tex. App.-Waco 2002, pet. ref'd). A prosecution witness who is indicted for the same offense as the defendant or a lesser-included offense arising out of the same criminal episode is an accomplice as a matter of law. *Herron*, 86 S.W.3d at 631. Adam, Jeremy, Michael, and Alex were all

charged with the same offense as K.B. Therefore, they are all accomplices as a matter of law. *Id.*

■ To determine whether the accomplices' testimony is corroborated, we first eliminate the accomplices' testimony and then review the remaining evidence to ascertain whether it tends to connect K.B. to the offense. *Solomon v. State,* 49 S.W.3d 356, 361 (Tex.Crim.App.2001); *Hardie,* 79 S.W.3d at 630; *In re E.F.,* 986 S.W.2d 806, 810–11 (Tex.App.-Austin 1999, pet. denied). The non-accomplice evidence does not have to be sufficient in its entirety to support a conviction beyond a reasonable doubt, nor does it have to directly link K.B. to the crime. The non-accomplice evidence need only tend to connect K.B. to the offense. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex. Crim.App.1997). The non-accomplice evidence can be merely circumstantial; however, there is no precise ruling as to the amount or weight of evidence that is required to corroborate accomplice testimony. Each case must be judged on its own facts. *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994); *C.M.G.,* 905 S.W.2d at 58.

■ After eliminating the testimony of Adam, Jeremy, Michael, and Alex, we are left with only the eyewitness testimony of Kutchka, Laura, and Florence. While neither Laura or Kutchka can identify whether K.B. was involved in the fight, Florence specifically identifies K.B. and Adam involved in the fight. Though Florence cannot pinpoint K.B. as the individual who hit Kutchka with a metal pipe, she can identify K.B. as committing some type of assault upon Kutchka. Corroboration testimony need not prove every element of the offense, but only give some evidence tending to connect the appellant with the offense. *C.M.G.,* 905 S.W.2d at 58–59. Moreover, it has been held that testimony placing the appellant at the scene and time

of the crime while in the accomplice's presence is sufficient corroboration testimony. *In re A.D.L.C.,* 598 S.W.2d 383, 385 (Tex. Civ.App.-Amarillo 1980, no writ) (citing *Tompkins v. State,* 501 S.W.2d 132, 134 (Tex.Crim.App.1973)). Florence's testimony places K.B. at the scene and time of the crime and in the presence of one of the accomplices, Adam. Therefore, Florence's testimony, though not sufficient by itself to support a conviction, is sufficient to corroborate the accomplices' testimony.

In his alternative argument, K.B. reasons that even considering the accomplices' testimony, the evidence is legally and factually insufficient to support the verdict beyond a reasonable doubt.

## LEGAL INSUFFICIENCY

■■ Juvenile cases require appellate courts to apply the criminal standard of legal insufficiency review. *In re C.P.,* 998 S.W.2d 703, 708 (Tex.App.-Waco 1999, no pet.). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.; McDuff,* 939 S.W.2d at 614.

The State was required to prove that K.B. (1) intentionally, knowingly, or recklessly (2) caused bodily injury (3) to Kutchka and (4) during the commission of that offense (5) used or exhibited (6) a deadly weapon, a metal pipe. Tex. Pen.Code. Ann. § 22.02(a) (Vernon 2004). K.B. argues that there is insufficient evidence for all elements of the offense.

Looking at all the evidence in support of the verdict, we conclude that there is legally insufficient evidence that the metal pipe

in question was a deadly weapon. A "deadly weapon" is defined by the Penal Code as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 2004); *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000). The Court of Criminal Appeals has identified certain factors that a jury may consider when analyzing whether an object is a deadly weapon: (1) the physical proximity between the alleged victim and the object; (2) any threats or words used by the accused; (3) the size and shape of the object; (4) the potential of the object to inflict death or serious injury; and (5) the manner in which the accused allegedly used the object. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex.Crim.App.1986); *Williams v. State*, 575 S.W.2d 30, 32–33 (Tex.Crim.App.1979); *see also Adame v. State*, 69 S.W.3d 581, 584 (Tex.Crim.App. 2002) (Meyers, J., concurring); *In re S.B.*, 117 S.W.3d 443, 446–47 (Tex.App.-Fort Worth 2003, no pet.); *Nunez v. State*, 117 S.W.3d 309, 323 (Tex.App.-Corpus Christi 2003, no pet.). No one factor is determinative, and each case must be examined on its own facts. *Adame*, 69 S.W.3d at 584; *Brown*, 716 S.W.2d at 946–47; *Nunez*, 117 S.W.3d at 323.

■ There is testimony that a metal pipe was involved in the fight; however, there is no testimony concerning the physical proximity between the victim and the pipe. Though there is testimony that K.B. cursed at Kutchka, there is no evidence that K.B. threatened Kutchka. There is no evidence in the record regarding the pipe's size and shape.

■ The State may use circumstantial evidence to prove an object is a deadly weapon. *See Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Crim.App.1980). An object's capability to inflict death or seri-

ous bodily injury can be inferred from the way it was used in the commission of the offense. *See id.* Yet, there is no testimony as to the manner in which K.B. used the pipe, nor is their any evidence from the victim that he was injured by the pipe. *Cf. S.B.*, 117 S.W.3d at 446–49 (holding evidence legally insufficient to show that baseball bat juvenile was carrying when she approached victim was a deadly weapon because juvenile was not within striking distance of victim, juvenile never swung bat at victim, and victim never felt threatened with imminent bodily injury).

Therefore, even after viewing all the evidence in a light most favorable to the verdict, we find the evidence is legally insufficient for a rational juror to find beyond a reasonable doubt that the metal pipe was a deadly weapon. *Cardenas*, 30 S.W.3d at 389–90.

We are required to reverse a juvenile case if evidence is found to be legally insufficient unless conditions exist that allow us to reform the judgment.

> "[A] court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense and (2) either the jury was instructed on the lesser included offense (at the request of a party or by the trial court *sua sponte*) or one of the parties asked for but was denied such an instruction."

*Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim.App.1999).

In this case, the lesser-included offense of misdemeanor assault was submitted to the jury. Given the evidence from many witnesses that K.B. was involved in the fight, we reverse K.B.'s aggravated assault adjudication and render a judgment of ad-

judication for the lesser-included offense of misdemeanor assault. *Cf. S.B.*, 117 S.W.3d at 451.

## CONCLUSION

Because we have found that the evidence is legally insufficient to support the jury's verdict that K.B. used or exhibited a deadly weapon, a metal pipe, during the commission of an assault, we do not address K.B.'s remaining issues. We reverse the judgment of the juvenile court and render a judgment of adjudication for misdemeanor assault. We reverse the disposition order and remand to the juvenile court for a new disposition hearing. TEX. FAM.CODE ANN. § 56.01(I) (Vernon 2004); *In re M.C.L.*, 110 S.W.3d 591, 600 (Tex. App.-Austin 2003, no pet.).

Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

The gang went looking for a fight. And despite the majority's determination that all accomplice testimony was corroborated, it ignores the testimony of several witness.

Jeremy testified that while he was fighting Kutchka, the victim, a metal pipe was swung close to his head. He did not see who was swinging the pipe. Jeremy did not believe the victim used the pipe against him because Kutchka did not use any weapons during the fight. He suspected the pipe was meant to be used on Kutchka. After the fight, Jeremy saw the pipe at Kutchka's feet. He took it and threw it in a field. When Jeremy found out he was being charged with assault with a metal pipe, he called K.B. Jeremy was trying to find out if someone said he had used the pipe. K.B. told Jeremy that he had used the metal pipe and that he had almost hit Jeremy with it.

Other witnesses testified that K.B. (1) had two metal wrenches in his possession the night of the fight; (2) kicked Kutchka in the head; (3) approached Kutchka's wife after the fight and, holding the head of a wrench, threatened her with it; and (4) hit Kutchka twice in the chest.

Because of the fight, Kutchka sustained gashes on his head, stomach, and from the top of his shoulder down to the middle of his back. He was bleeding from these injuries. He went to the hospital because of these injuries. He suffered a concussion. Scars of the injuries were still visible at the time of the trial. Kutchka's wife stated that he was beaten with a two-by-four, a metal pipe, and a brick that was thrown.

What the State needed to prove as a deadly weapon was anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B)(Vernon Supp.2004). A brief summary of the evidence we have is as follows: (1) a victim who was seen beaten with a metal pipe, suffered a concussion, and was scarred; and (2) a metal pipe in the hands of a person, who admitted to another that he used the pipe, who almost struck his fellow aggressor in the head with it, who was seen beating on the victim with at least his hands and feet, who carried wrenches that night, and who threatened another with a wrench after the fight. In the light most favorable to the verdict, this evidence is sufficient for a factfinder to conclude that the metal pipe, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000).

Because the majority finds the evidence legally insufficient to prove the deadly weapon and reverses the trial court's judgment, I respectfully dissent.