

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00311-CV

## IN THE MATTER OF C.W.L., A JUVENILE,

**From the County Court at Law No. 2
Johnson County, Texas
Trial Court No. J04605**

## MEMORANDUM OPINION

A jury found that C.W.L. had engaged in delinquent conduct by delivering a controlled substance in a drug-free zone. The court placed C.W.L. on probation for nine months. In two issues, C.W.L. contends that the evidence is legally insufficient to support his conviction. We will affirm.

### Standard of Review

In evaluating the legal sufficiency of the evidence in a juvenile delinquency appeal, we view all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See In re K.B.*, 143 S.W.3d 194, 199 (Tex. App.—Waco 2004, no pet.). "This 'familiar standard gives full play to the responsibility of the trier of fact

fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

## The Evidence

C.W.L. was a middle school student. L.B., a fellow student, testified that on the morning of May 25, 2007, he, C.W.L. and two other students were sitting at a table in the school cafeteria when C.W.L. took four light blue pills from his wallet. The pills were not in a prescription bottle, but C.W.L. said the pills were his prescribed ADHD medicine. C.W.L. offered to sell him two of the pills for one dollar, but he did not buy the pills. C.W.L. nevertheless gave him two of the pills but never told him why he would want the pills. L.B. also said that during the time he was talking to C.W.L., C.W.L. took one of the pills.

L.B. testified that in the meantime, another student who was sitting at the table went to the office to "tell on" C.W.L. Subsequently, Margaret Wright, a teacher's aide at the school, came into the cafeteria and told C.W.L. to come to the office, which he did. L.B. testified that Ms. Fernandez, the behavior specialist at the school who also "runs the cafeteria" from 7:30 a.m. to 8:45 a.m. each morning, then came to get C.W.L.'s "stuff." When Ms. Fernandez picked up C.W.L.'s bag, a pill that was on top of the bag fell onto the ground. L.B. then gave Ms. Fernandez the pills C.W.L. had given to him and told her that C.W.L. had given him the pills. Ms. Fernandez then took C.W.L.'s bag and the pills and left.

C.S., another student, testified that he was also sitting at the cafeteria table when C.W.L. offered to sell some pills to L.B. C.S. said that C.W.L. had approximately four or five blue capsules in a little plastic bag, and he "told everybody at the table that they were his ADHD pills." C.W.L. gave L.B. one of the pills and L.B. put the pill in his pocket. C.S. testified that he does not know what effect an ADHD pill would have on someone who does not have ADHD. L.B. then gave the pill to Ms. Fernandez when she came to the table. Contrary to L.B.'s testimony, C.S. testified that C.W.L. was still at the table when L.B. gave the pill to Ms. Fernandez, and C.W.L. then "realized he was in trouble so he just gave the bag of pills to Ms. Fernandez, as soon as she asked for them."

Ms. Fernandez testified that she was in the cafeteria on the morning in question. When C.W.L. briefly got up from the table where he was sitting, L.B. called her over to the table, told her that C.W.L. had pills in his possession, and gave her two pills. When she picked up C.W.L.'s bag, several of the same type of pills fell off the bag onto the floor. She described the pills as "blue, small. I believe they might have been square with a little tip on it and a slash down the middle with numbers . . . stamped in the middle of the letter." She immediately picked up the pills, put them in a sandwich bag, and sealed them up. She knew the pills were ADHD medicine and that ADHD medications contain controlled substances. She then called security and Ms. Wright to come get C.W.L. and the pills. She believed she gave the pills to Ms. Wright.

Ms. Wright testified that a student told her that C.W.L. had pills in his wallet. As a result, she called Monica Tharpe, the School Resource Officer. Ms. Wright testified that Officer Tharpe told her to go look in C.W.L.'s wallet but that she did not. Instead,

she went and got C.W.L. from the cafeteria and took him to the office. After she had left the office, Ms. Fernandez came running up the hallway and handed her a small Ziplock bag that had three blue pills in it. Ms. Fernandez told her that she had found the pills in C.W.L.'s things and asked her to take them into the office. She then went into the office, handed the bag containing the three pills to Helen Hernandez, the assistant principal, and told her that Ms. Fernandez had given them to her to bring to the office.

Ms. Hernandez testified that Ms. Wright brought some pills into her office on May 25, 2007, but she did not remember how many pills there were or if they were in some type of container or bag. She gave the pills to Officer Tharpe and said that she talked to C.W.L. about the pills that day, but she did not remember the specifics of the conversation.

Officer Tharpe testified that Ms. Wright contacted her by telephone and told her that C.W.L. had some pills. When Officer Tharpe later arrived at the school, she was notified that C.W.L. was in Ms. Hernandez's office. Officer Tharpe then went to Ms. Hernandez's office and Ms. Hernandez gave the pills to her. Officer Tharpe testified that there were three pills and they were small and blue with the letter "D" stamped on them. She then investigated by taking statements. She interviewed L.B., C.S., and another student who had been sitting at the cafeteria table with C.W.L. that morning. She also took statements from Ms. Fernandez and Ms. Wright and, at some point, performed a pat down search of C.W.L. Officer Tharpe ultimately determined that an offense had been committed and arrested C.W.L.

When she later arrived at the sheriff's office, she logged the pills in as evidence in the property room and wrote a report. She testified that after she called Poison Control and described the pills to the person who answered the phone, she determined that the pills were "Foca something" and were a controlled substance.

Detective Dusty Ford, an investigator for the Johnson County Sheriff's Department, testified that Officer Tharpe informed him that she was going to be making an arrest and that she had some pills that would need to be weighed and tested. He met Officer Tharpe at Juvenile Services with a set of digital scales so that they could determine the approximate weight of the pills. Detective Ford testified that there were three blue pills, they "had the marking of a letter D on one side," and they weighed approximately four-tenths of a gram. After the pills were weighed, they would have been placed into evidence in the property evidence lockers. When the case was forwarded to him the next day, he used the 25th Anniversary Nursing 2005 Drug Handbook published by Lippincott Williams and Wilkins to identify the pills as Focalin.

Detective Ford said that the pills were sent to the Texas Department of Public Safety crime lab (DPS lab) in Garland, Texas, for drug analysis and that it was determined there that the pills contained a controlled substance. The person who sent the response from the DPS lab was Nick Grizzle. Mr. Grizzle, a forensic scientist at the DPS lab in Garland, Texas, testified that he received property involving case number S0712278 from the Johnson County Sheriff's Department on June 12, 2007. Mr. Grizzle testified that the evidence was submitted to the lab by "C. Norman." Detective Ford

said that Detective Cody Norman was the property custodian at the time the offense in this case occurred.

Mr. Grizzle said that when he opened the envelope containing the evidence, he found "a plastic sandwich bag that contained three blue D-shaped tablets." He then used an Ident-A-Drug reference book and determined that the pills were Dex-Methylphenidate HCL, which is found in the prescription medication known by the brand name Focalin. Mr. Grizzle then tested the pills, consuming by test one whole pill in the process, and "found that the tablets contained Methylphenidate with a weight of 0.45 grams." Mr. Grizzle then sealed the evidence back up in an envelope and placed it into the DPS lab's main vault until "the agency came and picked it back up."

Detective Ford testified that on the morning of trial, he received the plastic bag containing the remaining two pills from the current evidence property custodian at the Johnson County Sheriff's Department and brought the evidence to the courtroom. Mr. Grizzle identified the two pills as the remaining two pills that were left over after his analysis at the DPS lab. Officer Tharpe also identified the two pills as the items that were taken as evidence during the arrest of C.W.L. and the same pills that she submitted into evidence in the property room of the Johnson County Sheriff's Department.

## Discussion

To prove that an accused unlawfully possessed a controlled substance, the State must establish: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v.*

*State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. . . ." *Id.* at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Previously, this was referred to as the "affirmative links" rule. *See id.* However, the Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and has chosen instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).

The rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406. The rule simply restates the commonsense notion that a person, such as a father, son, spouse, roommate, or friend, may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* Thus, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

In his first issue, C.W.L. contends that the evidence is legally insufficient to prove he delivered a controlled substance in a drug free zone because the State "failed to produce any evidence affirmatively linking [him] to the controlled substance tested by

the Department of Public Safety." The substance of this issue appears to be twofold. First, C.W.L. appears to argue that the evidence is legally insufficient to support his conviction because the State failed to produce any evidence that he exercised control, management, or care over the pills. C.W.L. points to the following facts in support of this contention: "[t]he incident allegedly occurred in a school cafeteria, crowded with students waiting for classes to start"; Ms. Fernandez was the only adult monitoring the cafeteria that morning, and "when she went to the table and gathered C.W.L.'s belongings, C.W.L. was not at the table"; some of the pills were given to Ms. Fernandez by L.B., and the other pills were recovered after falling off the top of C.W.L.'s bag, which "was accessible to every student wandering around the cafeteria that morning"; C.W.L.'s bag was "easily accessible to L.B., who was sitting next to it and who gave the other pills to Ms. Fernandez"; no one ever found any pills in C.W.L.'s possession; and "[t]here was a great deal of conflicting testimony about how the pills were recovered."

However, both L.B. and C.S. testified that the pills that were recovered belonged to C.W.L. and that C.W.L. told them the pills were his ADHD medicine. Thus, a rational trier of fact could have found beyond a reasonable doubt that C.W.L. exercised control, management, or care over the pills.

C.W.L. also contends that the evidence is legally insufficient to support his conviction because the State failed to prove that the pills L.B. and C.S. claimed to have seen in C.W.L.'s possession were the same pills tested by the DPS lab. C.W.L. does not, however, assert that the pills were tampered with. "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached,

not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). Moreover, in a legal sufficiency review, we consider all the record evidence, regardless of its admissibility. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). Based on the evidence as detailed above, the State sufficiently established that the pills L.B. and C.S. claimed to have seen in C.W.L.'s possession were the same pills tested by the DPS lab. We overrule C.W.L.'s first issue.

In his second issue, C.W.L. contends that the evidence is legally insufficient because the State failed to prove he knew the pills were a controlled substance. C.W.L. maintains in his brief that pills "do not have unique characteristics that would allow an inference to be drawn regarding their status as a controlled substance." He also points out that L.B. testified that C.W.L. never told him why he would want the ADHD pills. Both L.B. and C.S. testified that they did not know why someone who did not have ADHD would want to take ADHD medicine, and Officer Tharpe had to call Poison Control to confirm that the pills were a controlled substance.

However, the State sufficiently established that C.W.L. knew the pills were his ADHD medicine. *Cf. Hayes v. State*, 672 S.W.2d 246, 248 (Tex. App.—Beaumont 1984, no pet.) (holding that an accused may be criminally liable for knowingly carrying a weapon even if the accused did not know that the carrying of the weapon constituted an offense). Both L.B. and C.S. testified that C.W.L. told them the pills were his ADHD medicine. In fact, L.B. testified that although the pills were not in a prescription bottle, C.W.L. said the pills were his *prescribed* ADHD medicine and that C.W.L. tried to sell him two of the pills. For this reason, we conclude that a rational trier of fact could have

found beyond a reasonable doubt that C.W.L. knew the pills were a controlled substance and, therefore, that he delivered a controlled substance in a drug-free zone. We overrule C.W.L.'s second issue.

## Conclusion

Having overruled C.W.L.'s two issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed July 29, 2009
[CV06]