

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00127-CV

## IN THE MATTER OF J.W., A JUVENILE,

From the County Court at Law No. 2
Johnson County, Texas
Trial Court No. J04774

## MEMORANDUM OPINION

In a bench trial, J.W., a juvenile, was found to have engaged in delinquent conduct and was placed on eight months of community supervision. Raising two issues, J.W. appeals.

The adjudication petition alleged that J.W. committed criminal mischief ($1,500 or more but less than $20,000) by scratching K.H.'s car. The trial judge found that J.W. engaged in delinquent conduct by committing a lesser offense of criminal mischief ($500 or more but less than $1,500) and ordered J.W. to pay restitution. J.W.'s first issue complains of the admission of hearsay, and her second issue asserts that the evidence is legally insufficient to support the delinquency finding, which amounts to a violation of due process.

The evidence in this case revolves around several female high school students. On or about the evening of November 25, 2007, K.H. drove her car to Joshua High School to attend a basketball game. Her car had no damage at that time. K.H. parked her car in the lot behind the gym and walked around the building to go in the front entrance. There K.H. encountered J.W., who was with a female unknown to K.H. J.W. yelled at K.H., using vulgar language. K.H. proceeded into the gym, left the game at halftime, and drove home.

At school the next day, a friend asked K.H. what had happened to K.H.'s car, and K.H. went to observe that it had scratches. K.H. reported the damage to David Hoschar, the School Resource Officer, who conducted an investigation. Officer Hoschar questioned J.W., who admitted to being at the school on the night K.H.'s car was damaged. Officer Hoschar learned that the person with J.W. that night was G.A. After Officer Hoschar questioned G.A., she wrote and signed a witness statement.

G.A. was called as a witness by the State. She testified that she had recently been in an auto accident, had suffered a head injury, and had lost some memory. She did not remember the events of November 25, 2007. G.A. was shown the witness statement; she said that she did not recognize the document but did recognize her signature. She then read the statement to herself and said she did not remember the events described in it because of her memory loss. On voir dire, G.A. stated that she did not remember where she was when she signed it or signing the document. Nor did she remember if she wrote it or someone else wrote it. She also reiterated that she had no independent recollection of the events concerning the car scratching other than from people talking

about it leading up to the trial.

The State sought to read G.A.'s statement into evidence under Rule of Evidence 803(5) over J.W.'s objections, which the trial court overruled. The State was allowed to read G.A.'s statement, as follows:

> On November 5th, 2007, while attending a basketball game, me and [J.W.] were walking out of the game and [K.H.] was walking in and me and [J.W.] walked a little bit further and J.W. started running towards the right in the back parking lot and I sat there waiting for my dad to get there and then like two minutes later [J.W.] started running back and I asked her why she was running and she said that she keyed her ([K.H.'s]) car and then we left.

Officer Hoschar testified that he watched G.A. write the statement. After she wrote it, he asked her if everything she had written was true, to which she replied affirmatively. No hearsay objection was made to that testimony. Officer Hoschar then also signed the statement, along with noting the date and time.

J.W. complains in her first issue that the trial court erred in allowing the statement to be read into evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See In re J.P.B.,* 180 S.W.3d 570, 575 (Tex. 2005).

Rule 803(5) provides the following exception to the hearsay rule, even though the declarant is available as a witness:

> (5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record

may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

TEX. R. EVID. 803(5).

> The four predicate elements for the use of a recorded recollection are:
>
> (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.   2 J. Strong, et al., *McCormick On Evidence* §§ 279-283 (4th ed. 1992).

*Johnson v. State,* 967 S.W.2d 410, 416 (Tex. Crim. App. 1996); *see Brown v. State,* --- S.W.3d ---, ---, 2009 WL 1153412, at *5 (Tex. App.—Dallas April 30, 2009, no pet. h.).   J.W. specifically asserts that the State did not satisfy the first and fourth elements.   We disagree.

On the first element, J.W. contends that the event that G.A. must have had firsthand knowledge of was the scratching of the car, but we agree with the State that the proper event at issue in the statement was J.W.'s verbal statement that she had "keyed" K.H.'s car.  The first predicate element was satisfied.

> In particular, to meet the fourth element, the witness may testify that she presently remembers recording the fact correctly or remembers recognizing the writing as accurate when she read it at an earlier time. *Id.* at § 283.  But if her present memory is less effective, it is sufficient if the witness testifies that she knows the memorandum is correct because of a habit or practice to record matters accurately or to check them for accuracy. *Ibid.*  At the extreme, it is even sufficient if the individual testifies to recognizing her signature on the statement and believes the statement is correct because she would not have signed it if she had not believed it true at the time. *Ibid;* 3 Wigmore, *Evidence* § 747 (Chadbourn rev. 1970).  However, the witness must acknowledge at trial the accuracy of the statement.  2 J. Strong, et al., *McCormick On Evidence* § 283 (4th ed. 1992).

*Johnson,* 967 S.W.2d at 416.

To satisfy the fourth element, the State relies on Officer Hoschar's unobjected-to hearsay testimony that G.A. told him that her statement was true at the time she wrote it. The fourth element's purpose is to have evidence before the trial court that the statement was accurate when made. Ideally, this evidence would come from the declarant, but under the circumstances of this case, we cannot say that the trial court abused its discretion in admitting the statement based on Officer Hoschar's unobjected-to hearsay testimony that G.A. told him that her statement was true. *See Wiegert v. State,* 948 S.W.2d 54, 59 (Tex. App.—Fort Worth 1997, no pet.) (holding that where declarant did not specifically testify statement was accurate when made, absent showing statement was inaccurate or circumstances casting doubt on document's trustworthiness, trial court did not abuse its discretion in allowing hearsay under recorded recollection exception); *see also* TEX. R. EVID. 802 (hearsay not objected to has probative value); *Walker v. State,* 291 S.W.3d 114, 119 n.5 (Tex. App.—Texarkana 2009, no pet.). We overrule J.W.'s first issue.

J.W.'s second issue complains about the legal sufficiency of the evidence. In evaluating the legal sufficiency of the evidence in a juvenile delinquency appeal, we view all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See In re K.B.,* 143 S.W.3d 194, 199 (Tex. App.—Waco 2004, no pet.). "This 'familiar standard gives full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Officer Hoschar said that he interviewed J.W. about the car damage, and J.W. admitted that she was at the basketball game with G.A. on the night in question. J.W. told him that she was "tired of hearing" about K.H.'s car and that she was not responsible for the damage.

In addition to her testimony that J.W. yelled at her and called her vulgar names when K.H. was entering the game and J.W. was leaving, K.H. testified that she received text messages from a phone number that she recognized as J.W.'s phone number and that those messages contained threats to fight K.H. and more name calling. K.H. did not know who actually sent the messages, and the trial judge, in allowing K.H. to testify about the content of the text messages, said he would disregard who the source of them may have been. K.H. also testified about another text message from J.W.'s phone number in which the person stated that she admitted to "keying" K.H.'s car only because she was in trouble and that the person who actually "keyed" the car was the friend who was with J.W. at the game.

K.H. also testified that she read on what she believed to be J.W.'s MySpace page—based on J.W.'s photo and her MySpace friends—a conversation that appeared to K.H. to be between J.W. and another girl in which J.W. stated that she had "keyed" K.H.'s car. K.H. admitted that she had no personal knowledge that J.W. typed that

admission on a computer, and in allowing K.H. to testify about what she read on MySpace, the trial judge said that he would "consider the credibility of the source"—MySpace.

Viewing all the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that J.W. engaged in the alleged delinquent conduct. We overrule J.W.'s second issue and affirm the trial court's order of adjudication.

REX D. DAVIS<br>
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed December 30, 2009
[CV06]